UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RICHARD EUGENE BURCHEL, Jr.,

                Plaintiff,

v.                                                  5:14-CV-0081
                                                   (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                       OF COUNSEL:

STANLEY LAW OFFICES                    JAYA A. SHURTLIFF, ESQ.
  Counsel for Plaintiff
215 Burnet Ave.
Syracuse, NY 13203

U.S. SOCIAL SECURITY ADMIN.          AMANDA J. LOCKSHIN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

      This matter was referred for report and recommendation by the Honorable Chief Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 15) This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Richard Eugene Burchell, Jr. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties'

cross-motions for judgment on the pleadings. (Dkt. Nos. 11, 14.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied, and Defendant's motion be granted.

I.  **RELEVANT BACKGROUND**

   A.  **Factual Background**

Plaintiff was born on August 13, 1967. (T. 160.) He completed high school with an Individualized Education Program ("IEP") Diploma. (T. 396.) Plaintiff's alleged disability consists of a learning disability and "back problems." (T. 177.) Plaintiff's alleged disability onset date is August 3, 2009. (T. 160.) Plaintiff's date last insured is December 31, 2012. (T. 173.) Plaintiff previously worked as a trash collector and dishwasher. (T. 178.)

   B.  **Procedural History**

On April 11, 2011, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 160.) Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On April 11, 2012, Plaintiff appeared before the ALJ, Katherine Edgell. (T. 23-56.) On April 26, 2012, ALJ Edgell issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 8-22.) On December 2, 2013, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-5.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C.  **The ALJ's Decision**

In her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 13-18.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2012 and Plaintiff had not engaged in substantial gainful activity since August 3, 2009. (T. 13.) Second, the ALJ found that Plaintiff had the severe impairments of burst fracture of the thoracic spine, status-post T12-L1 fusion; history of hypertension; learning disability; and, alcohol/marijuana abuse. (*Id.*) The ALJ determined that Plaintiff's carpal tunnel syndrome was a non-severe impairment. (T. 13-14.) Third, the ALJ found that Plaintiff did not have an impairment, or combination of impairments, that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 14.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform: light work, "except for work that required lifting/carrying more than 10 pounds frequently and 30 pounds occasionally; or work that involve[d] more than occasional pushing/pulling or overhead reaching. The [Plaintiff] [could] perform simple tasks." (*Id.*)[1] Fifth, the ALJ determined that Plaintiff was incapable of performing his past relevant work. (T. 17.) Based on vocational expert ("VE") testimony, the ALJ determined that there were jobs that existed in significant numbers in the national economy which Plaintiff could perform. (T. 17-18.)

## II.  THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.  Plaintiff's Arguments

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

Plaintiff makes four separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to fully develop the record and failed to properly evaluate Plaintiff's "mental retardation" at steps two and three.  (Dkt. No. 11 at 6-11 [Pl.'s Mem. of Law].)[2]  Second, Plaintiff argues the ALJ did not apply the appropriate legal standards in arriving at her mental RFC finding.  (*Id.* at 11-13.)  Third, Plaintiff argues the ALJ did not apply the appropriate legal standards in assessing Plaintiff's credibility.  (*Id.* at 14-15.)  Fourth, and lastly, Plaintiff argues the VE testimony cannot provide substantial evidence to support the denial.  (*Id.* at 15-16.)

### B. Defendant's Arguments

In response, Defendant makes five arguments.  First, Defendant argues the ALJ properly considered Plaintiff's asserted intellectual disability.  (Dkt. No. 14 at 5-10 [Def.'s Mem. of Law].)  Second, Defendant argues the ALJ properly considered Plaintiff's mental residual functional capacity.  (*Id.* at 10-12.)  Third, Defendant argues the ALJ properly considered Plaintiff's subjective complaints.  (*Id.* at 12-14.)  Fourth, Defendant argues the ALJ properly relied upon VE testimony.  (*Id.* at 14.)  Fifth, and lastly, Defendant argues an award of benefits is not warranted.  (*Id.*)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v.*

---

[2] The Social Security Administration replaced the term "mental retardation" with "intellectual disability" in September of 2013. *See* Change in Terminology: "Mental Retardation" to "Intellectual Disability", 78 FR 46499-01.  For the purpose of this report and recommendation, the term "intellectual disability" will be used.

*Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or if the determination was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In

other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Whether the ALJ Properly Considered Plaintiff's Alleged Intellectual Disability.

6

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 5-10 [Def.'s Mem. of Law].) The Court adds the following analysis.

Plaintiff first argues the ALJ failed to fully develop the record regarding Plaintiff's intellectual disability because the ALJ did not obtain IQ testing prior to the written decision. (Dkt. No. 11 at 8 [Pl.'s Mem. of Law].) To be sure, an ALJ is under an affirmative duty to "make every reasonable effort" to develop the record. 20 C.F.R. § 404.1512(d). However, reviewing courts have held that ALJs are not required to seek additional information absent "obvious gaps" that preclude an informed decision. *Rosa v. Callahan,* 168 F.3d 72, 79 n. 5 (2d Cir. 1999); *see also Hart v. Comm'r of Soc. Sec.,* 5:07-CV-1270, 2010 WL 2817479, at *5 (N.D.N.Y. July 10, 2012). Plaintiff asserts that there was an "obvious gap" in the record because the ALJ did not have Plaintiff's IQ score and the record indicated Plaintiff may have had an intellectual disability. (Dkt. No. 11 at 8 [Pl.'s Mem. of Law].)

Although the ALJ did not have Plaintiff's IQ score and testing information available to her before she rendered a decision, this information was provided to the AC. (T. 5.)[3] There was no "obvious gap" in the record where the record was completely developed by the time the ALJ's decision was rendered the final decision of the Commissioner. *Lamorey v. Barnhart*, 158 F. App'x 361, 362-363 (2d Cir. 2006) (finding remand unnecessary where the record was adequately developed by the time the Commissioner's decision became final). Therefore, the ALJ properly developed the

---

[3] It appears from the record that the Administration did order an IQ evaluations pre-hearing; however, Plaintiff missed two scheduled appointments. (T. 280.) Plaintiff presented at his third appointment on April 30, 2012, which was four days after the written decision date. (*Id*.) The ALJ made every reasonable effort to develop the record before her decision was rendered.

7

record.  The ALJ fulfilled her duty to develop the record where additional IQ testing was ordered, even though the testing was not completed until after the written decision was issued.  The record was complete because although the ALJ did not have the testing results, the results were presented to the AC.

Second, Plaintiff argues that given his IQ score he met Listing 12.05(C) under 20 C.F.R. Pt. 404, Subpt. P, App. 1 and was therefore presumptively disabled.  (Dkt. No. 11 at 8-11 [Pl.'s Mem. of Law].)  At step three of the sequential process an ALJ must determine whether a plaintiff has an impairment, or combination of impairments, that meets or medically equals the criteria of an impairment listed in 20 C.F.R. Pt. 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.520(d), 404.1525, and 404.1526). If a plaintiff meets a listing, he is considered disabled.  *Id.* at § 404.1525.

Listing 12.05 defines "Intellectual Disability" as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.  The Listing goes on to list additional requirements, A-D, which must be satisfied in order to meet the listing criteria.  For the purposes of the instant case the focus is on the requirements outlined in section C.  Section C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* at § 12.05(C).

Testing revealed that Plaintiff had a full scale IQ of 63 based on the Wechsler Adult Intelligence Scale, Fourth Edition (WAIS-IV).  (T. 437.)  There is no dispute that Plaintiff's IQ score satisfied the IQ requirement of Listing 12.05(C), as the score clearly

8

falls between 60 and 70.  However, even if the ALJ had Plaintiff's IQ score, substantial evidence supports the ALJ determination that Plaintiff did not have "deficits in adaptive functioning" as required in the preamble to Listing 12.05.  Therefore, Plaintiff did not meet the Listing 12.05(C).

Plaintiff asserts that there was no "meaningful analysis or explanation" of why Plaintiff did not meet or equal Listing 12.05 in the ALJ's decision, or once IQ scores were obtained, at the AC level.  (Dkt. No. 11 at 8 [Pl.'s Mem. of Law].)  However, both the ALJ and the AC addressed Listing 12.05.

At step three the ALJ determined that although the record did not contain formal IQ testing, Plaintiff did not meet a Listing under 12.05, because Plaintiff showed no deficits in adaptive functioning.  (T. 14.)[4]  The Second Circuit has held that a qualifying IQ score may be prima facie evidence that a plaintiff suffers from "significantly subaverage general intellectual function;" however, Listing 12.05 also requires the additional finding that a plaintiff has deficits of adaptive functioning.  *Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012), *see also Lawler v. Astrue*, 512 F.App'x 108 (2d Cir. 2013) ("In addition to meeting [the IQ score] qualifications, the [plaintiff] must meet a separate burden of showing deficits in adaptive functioning that arise from [his] cognitive limitations.") (internal quotation omitted).  Adaptive functioning refers to an individual's "[]ability to cope with the challenges of ordinary everyday life." *Novy v. Astrue,* 497 F.3d 708, 710 (7th Cir. 2007) (observing that "[i]f you cannot cope with those challenges, you are not going to be able to hold down a full-time job").

---

[4] The ALJ does not specifically cite to Listing 12.05(C); however, the ALJ refers to Listing 12.00 *et seq.*  (T. 14.)

The ALJ concluded that Plaintiff did not have deficits of adaptive functioning because Plaintiff was able to work competitively for at least fifteen years and his mental status evaluation from July 2011 showed no significant psychiatric impairment. (*Id.*) The ALJ also stated that Plaintiff had mild limitations in his activities of daily living; mild limitations in social functioning; mild to moderate limitations in concentration, persistence, and pace; he handled his own money; he traveled independently; and he cared for all of his activities of daily living without assistance. (*Id.*) *See McNally v. Comm'r of Soc. Sec.*, No. 14-CV-00076, 2015 WL 3621437, at *9 (N.D.N.Y. June 9, 2015) (finding that notwithstanding plaintiff's IQ of 70, plaintiff did not have deficits in adaptive functioning where he had worked for twenty years, he took public transportation, socialized and enjoyed hobbies).

Contrary to Plaintiff's assertion, the AC also specifically addressed Plaintiff's IQ score and Listing 12.05(C). (Dkt. No. 11 at 3 [Pl.'s Mem. of Law].) The AC noted that Plaintiff did not have deficits of adaptive functioning because he was able to handle his personal care and daily activities, and he worked for several years. (T. 2.)

Therefore, the ALJ did not fail to develop the record, because the record was complete by the time the ALJ's decision became the final decision of the Commissioner. Further, even if the ALJ had been in possession of Plaintiff's IQ score the ALJ's step three determination was nonetheless supported by substantial evidence. The ALJ properly concluded that Plaintiff did not have deficits of adaptive functioning because Plaintiff, among other things, was able to hold down a steady job for fifteen years and

performed activities of daily living independently.  Therefore remand is not recommended on this matter.[5]

B.     **Whether the ALJ Properly Considered Plaintiff's Mental RFC.**

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 14 at 10-12 [Def.'s Mem. of Law].)  The Court adds the following analysis.

A plaintiff's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments, including non-severe impairments.  20 C.F.R. §§ 404.1520(e), 404.1545(a)-(e).

Plaintiff argues the ALJ "did not express Plaintiff's mental RFC as required by law, and did not meaningfully address . . . work-related functions."  (Dkt. No. 11 at 13 [Pl.'s Mem. of Law].)  Specifically, Plaintiff argues the ALJ failed to incorporate the Psychiatric Review Technique ("PRT") form's "mode of analysis" in her decision.  (*Id.* at 12-13.)  To be sure, when mental impairments are at issue, ALJs should employ a "psychiatric review technique" (sometimes referred to as a "special technique").  *See* 20 C.F.R. § 404.1520a(b)-(e); *see also Petrie v. Astrue,* 412 Fed. App'x 401, 403 (2d Cir. 2011) (summary order); *see also Kohler v. Astrue,* 546 F.3d 260, 265–66 (2d Cir.2008) (describing analysis).  Further, mental RFCs must be expressed in terms of work related functions.  *See* 20 C.F.R. § 404.1545[6], SSR 96-8p, 1996 WL 374184.

---

[5] Plaintiff's memorandum of law states that "the [AC] erred at Steps 2 and 3 when Plaintiff's mental retardation was not properly evaluated;" however, the step two argument was not expanded on in the brief.  (Dkt. No. 11 at 1, 6-11.)

[6] A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.  20 C.F.R. § 404.1545(c).

A non-examining State agency medical consultant, A. Hochberg, Ph.D., completed a PRT form. (T. 363-376.) Plaintiff contends that the PRT indicated more severe mental limitations than the ALJ's RFC accounted for. (*Id.* at 13.) For example, the PRT indicated that Plaintiff had moderate difficulties in his ability to maintain concentration, persistence, and pace. (T. 373) However, this limitation was assessed in the context of "B" criteria for Listings regarding mental health. (*Id.*) ALJs are cautioned that limitations and restrictions from a mental impairment in "paragraph B" criteria are not an RFC assessment "but are used to rate the severity of mental impairment(s) at steps 2 and 3 . . . the mental RFC assessment used at steps 4 and 5 . . . requires a more detailed assessment." SSR 96-8p, 1996 WL 374184, at *4. Dr. Hochberg ultimately concluded, based on the record and his findings in the PRT form, that Plaintiff was able to "understand, carry out and remember simple instructions, able to use appropriate judgment to make simple, work-related decisions, able to respond appropriately to supervisors, co-workers and work situations, and [was] able to deal with changes in a routine work-setting." (T. 361.)

Plaintiff contends that the ALJ failed to mention Dr. Hochberg's report in her decision. (Dkt. No. 11 at 13 [Pl.'s Mem. of Law].) Although the ALJ does not mention Dr. Hochberg by name, his medical opinion was referenced in the ALJ's decision and the ALJ stated that she agreed with the opinion of the State agency psychological consultant. (T. 16.) Further, at step three while conducting the "special technique" analysis, the ALJ reiterated the limitations imposed on Plaintiff by Dr. Hochberg in his discussion of paragraph "B" criteria. Therefore, the ALJ did discuss Dr. Hochberg's opinion and indicated she relied on that opinion when formulating her mental RFC

determination. In addition, "[a]n ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision." *LaRock ex. rel. M.K. v. Astrue,* No. 10–CV–1019, 2011 WL 1882292, at *7 (N.D.N.Y. Apr. 29, 2011) (citing *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) (internal quotation marks omitted)).

To be sure, Plaintiff's record does not contain a wide array of mental health records. Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) citing *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The ALJ's mental RFC analysis was supported by substantial evidence because it was supported by the opinions of the consultative examiner and State agency medical examiner.

The mental health portion of the medical record consists of consultative examiner, Jeanne Shapiro, Ph.D.'s examinations and medical source statements, and Dr. Hochberg's mental RFC assessment and PRT. (T. 351-354, 359-376, 435-442.) The record also contains a "case note" from Jean Czarniak, a vocational rehabilitation counselor, and Plaintiff's high school diploma indicating that he graduated Cortland Senior High School with an IEP certificate. (T. 396, 400-401.)

In a medical source statement dated July 14, 2011, Dr. Shapiro concluded Plaintiff was capable of understanding and following simple instructions and directions. (T. 353.) Dr. Shapiro observed that Plaintiff was able to perform simple tasks alone and "perhaps" some complex tasks with supervision. (T. 354.) She stated Plaintiff was able to maintain attention and concentration for tasks. (*Id.*) Dr. Shapiro further opined

13

Plaintiff could regularly attend to a routine and maintain a schedule; he could learn new tasks; and, could make appropriate decisions. (*Id.*) Dr. Shapiro opined Plaintiff was able to relate and interact moderately well with others, and was capable of dealing with stress. (*Id.*) On April 30, 2012, Dr. Shapiro again examined Plaintiff and administered an intelligence evaluation. Dr. Shapiro completed another medical source statement based on the results of the intelligence evaluation and exam. The medical source statement from April 2012 was indistinguishable from the medical source statement from July 2011. (T. 437.)

The ALJ had only Dr. Shapiro's July 2011 exam and medical source statement; however, the July 2011 statement and the April 2012 statement were practically identical. Although not discussed in great detail, the ALJ stated in her step three analysis that Plaintiff's mental status evaluation by Dr. Shapiro showed "no significant psychiatric impairments." (T. 14.) As Defendant aptly states, the only area in which Dr. Shapiro noted a loss in function was in Plaintiff's ability to understand and remember "complex" instructions. (Dkt. No. 14 at 12 [Def.'s Mem. of Law].) The ALJ's mental RFC limiting Plaintiff to "simple tasks" was consistent with Dr. Shapiro's medical source statement, because there were no other limitations beyond that. Dr. Shapiro's medical source statement was the only medical opinion in the record which reflected Plaintiff's mental work function limitations; therefore, the ALJ's mental RFC determination was supported by substantial evidence because it encompassed those work limitations.[7]

### C. Whether the ALJ Properly Assessed Plaintiff's Credibility.

---

[7] Dr. Hochberg's evaluation essentially adopts Dr. Shapiro's medical source statement. (T. 361.)

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 12-14 [Def.'s Mem. of Law].) The Court adds the following analysis.

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (*quoting Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5)

> other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (*citing Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

Plaintiff argues the ALJ erred in her credibility analysis because she failed to discuss all the factors outlined above; specifically, the ALJ failed to discuss Plaintiff's educational history and deficits in adaptive functioning.

First, where an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527(c), the Court held that "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

Here, the ALJ thoroughly discussed the consistency of Plaintiff's statements with the objective medical record. (T. 16.) Plaintiff alleges that the ALJ failed to discuss Plaintiff's education and deficits of adaptive functioning; however, the ALJ did discuss those factors. The ALJ specifically discussed adaptive functioning at step three of her decision. (T. 14.) The ALJ also referred to Plaintiffs' activities of daily living throughout the decision. (T. 14, 16-17.) Further, the ALJ took into consideration limitations beyond simple work based on Plaintiff's assertion that he could not read well. The ALJ's

16

hypothetical to the VE included a limitation on reading level and amount of reading required.  (T. 52.)  The ALJ properly followed all the factors in her credibility assessment; therefore, remand is not recommended in this matter.

> D. **Whether the ALJ Properly Relied Upon VE Testimony.**

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 14 at 14 [Def.'s Mem. of Law].)  The Court adds the following analysis.

The ALJ did not err in posing a hypothetical question to the VE that was based on an RFC assessment that, for the reasons stated in Part IV.B, was supported by substantial evidence.  *See Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record).

> E. **Whether Remand for Calculation of Benefits is Warranted.**

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 14 at 14 [Def.'s Mem. of Law].)  The Court adds the following analysis.

Plaintiff requests that this matter be remanded with a "directed finding of disability."  (Dkt. No. 11 at 16 [Pl.'s Mem. of Law].)  It is not recommend that this matter be remanded because the ALJ's determination was supported by substantial evidence; therefore, it is recommended that Plaintiff's request that the matter be remanded for direct payment of benefits also be denied.

**WHEREFORE**, based on the findings above, it is

> **RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 29, 2015

*/s/ Bill Carter*
William B. Mitchell Carter
U.S. Magistrate Judge